**192     CASES IN THE COURT OF APPEALS**

Caton *vs.* Emily MacTavish, ex'rx of Charles Carroll of Carrollton.—1838.

---

RICHARD CATON *vs.* EMILY MACTAVISH, *Executrix of* CHARLES CARROLL OF CARROLLTON.—*December*, 1838.

When the declaration in a case, referred to arbitration, presents a case cognizable in a court of law, it is not essential to support the jurisdiction of the court, that the matters in controversy submitted to, and decided by the arbitrators, should be properly subjects of common law jurisdiction.

If, upon a reference by rule of court, the award be for the payment of money, and judgment is entered upon it, an execution to enforce payment issues as upon a judgment or verdict. If the award is for any other matter, as for a conveyance, &c. it may be enforced by attachment.

The principle is well settled, that where the matters awarded are independent, and distinct from each other, those which are within the submission are good, and not vitiated, or contaminated, by those which are without it.

An award may be bad in part, and good in part, if the void part of the award is not of matter necessary to be decided, so as to render it final according to the terms of the submission, or be not the consideration or recompense of the thing awarded to be done on the other side.

Caton *vs.* Emily MacTavish, ex'rx of Charles Carroll of Carrollton.—1838.

The doctrine of the present day is, to treat awards with more liberality than formerly, and every reasonable intendment will be made for their support. It will be intended, that all matters submitted, have been decided by the arbitrator, unless the contrary appears; and it will be also intended, that he has not exceeded his authority.

APPEAL from *Baltimore* county court.

THIS was an action of *assumpsit*, brought by the appellant on the 17th April, 1834. The declaration was endorsed with an order to the clerk of the county court, to "docket this suit by consent, and enter the case referred according to the agreement in *Carroll vs. McTavish and Caton*, to *Stevenson Archer* and *Richard B. Magruder, Esqr's*, they having been selected according to the terms of that agreement.

J. GLENN, *for Plaintiff*,
R. JOHNSON, *Defendant's Attorney.*"

The agreement referred to in the aforegoing order, is in form following, to wit:

"The following are the terms on which the differences now existing in reference to the probat of the last codicil to the will of *Charles Carroll of Carrollton*, have been adjusted by the counsel for the respective parties, who have been fully authorized for that purpose: 1st. The caveat is to be withdrawn, and the will and codicils immediately proved.

"2d. Mrs. Emily McTavish is to be appointed sole executrix, and should it be found necessary to enable her to act as such, an application, with the assent of all the parties, to be made to the legislature for a law to authorize and empower her to act, she not to charge any commission, but not to be subjected to any expense.

"3d. Mr. McTavish and Doctor Stewart to renounce the trusts under the will and codicils, except as to the Caton branch of the Carroll family.

"4th. The deeds from Charles Carroll of Carrollton, to Mrs. Emily McTavish, and to Charles Carroll of Homewood, for parts of Doughoragen Manor, to be confirmed, either now or hereafter, if required, by the several parties to this agreement, or their representatives.

· 194    CASES IN THE COURT OF APPEALS

Caton *vs.* Emily MacTavish, ex'rx of Charles Carroll of Carrollton.—1838.

"5th. The claims of Mr. Charles C. Harper, Mr. Charles Carroll of Homewood, and Mrs. Emily McTavish, and their respective branches of the family, for negroes, &c. received from the testator since the last codicil aforesaid, made in 1831, as also the claims of Mr. and Mrs. McTavish, for the notes of Charles Carroll of Carrollton for $14,000, and the contracts in reference to the buildings on the Folly Farm, the materials, hauling, &c. not yet paid or settled for by the estate of Charles Carroll of Carrollton, to be referred to Judges *Stevenson Archer* and *Richard B. Magruder*, to be decided by them, and should they differ, they are to choose a third person, and then the award of the majority of the three to be final between the parties.

"6th. The award of Richard Caton to be opened, and the subject matter of it to be referred to referees to be chosen in the manner herein after specified, the referees to act under the same instructions and authority as the former referees who made said award were instructed and authorized to do, and as if Mr. Carroll's letters to the former referees had been directed to them. A case to be docketed against the executrix, and this reference to be under a rule of court, to which the terms of this stipulation are to apply. The award as it now stands, shall not be impugned or impaired by this assent to open it, should this reference by any means be frustrated, but it is to remain in full force and operation as it now does, or ever did. The referees are to make their award during the present year, should they not, then this reference to be void. The referees are to be paid equally by the parties for their services—the counsel on each side are to name two persons, from whom each is to select one—the two thus selected to be the referees, and if they differ, then they to choose a third person, and the award of the majority to be final. Mrs. McTavish is not to pay Mr. Caton's award, nor to do any thing to give validity to said award until a new award is made, or Mr. Caton recovers his claim by a suit at law in the event of no award taking place.

"7th. In the litigation or examination before the arbitra-

tors of the matters referred, the questions involved in the several issues not to be agitated, in other words, it will not be contended in opposition to the claims of Richard Caton and Mr. and Mrs. McTavish, or any of them, or those of any members of their families, against Mr. Carroll's estate, that Charles Carroll of Carrollton was incompetent, or that he was subject to the undue dominion or under the undue influence of any one, or that he was urged by any importunities which he was too weak to resist.

" 8th. It is expressly agreed and understood that no attempt shall be made by any of the parties to this agreement to enforce the forfeiture under the said last codicil, for litigating before said referees any of the matters referred to them, by any under this agreement, or for any thing that has occurred up to this time.

" 9th. Should any further points of difference arise which the counsel on either side signing this agreement, should deem to have been omitted in the aforegoing stipulations, the same are to be decided either by the arbitrators now agreed on in this agreement, or by a common friend or friends, as provided for in the will of Charles Carroll of Carrollton.

" Reverdy Johnson, John V. L. McMahon, Charles Carroll, Charles C. Harper, for himself and for Emily L. Harper, and Robert G. Harper.

" Richard H. Bayard, J. Lee, Frederick A. Schley, John Nelson, U. S. Heath, John Glenn, Richard Caton, for himself and Louisa C., Marchioness of Carmarthen.

" Mary Caton, John McTavish, for himself and as attorney for Mary Anne, Marchioness Wellesley, and Elizabeth Caton, Emily McTavish."

The cause was accordingly entered as referred, under the general issue plea, by the defendant.

" The arbitrators, at September term, in the year 1834, returned their award in writing, of and upon the premises aforesaid, under their hands and seals, in the words and of the tenor following, to wit:

" We, the undersigned arbitrators, appointed by the sixth

article of an instrument of writing, bearing date the twelfth day of February, in the year of our Lord one thousand eight hundred and thirty-four, and executed by Reverdy Johnson, John V. L. McMahon, Charles Carroll, Charles C. Harper, for himself and for Emily L. Harper and Robert G. Harper, Richard H. Bayard, J. Lee, Frederick A. Schley, John Nelson, U. S. Heath, John Glenn, Richard Caton, John McTavish, for himself and as attorney for Mary Anne, Marchioness Wellesley, and Elizabeth Caton, and Emily McTavish; and which said article is as follows:

" 6th. The award of Richard Caton to be opened, and the subject matter of it to be referred to referees, to be chosen in the manner herein after specified.   The referees to act under the same instructions and authority as the former referees, who made said award were instructed and authorized to do, and *as if* Mr. Carroll's letters to the former referees had been directed to them.   A case to be docketed against the executrix, and this reference to be made under a rule of court, to which the terms in this stipulation are to apply.   The award, as it now stands, shall not be impugned or impaired by this assent to open it, should this reference by any means be frustrated, but it is to remain in full force and operation as it now does or ever did—the referees are to make their award during the present year, should they not, then this reference to be void.   The referees are to be paid equally by the parties for their services.   The counsel on each side are to name two persons, from whom each is to select one—the two thus selected to be the referees, and if they differ, then they to choose a third person, and the award of the majority to be final.   Mrs. McTavish is not to pay Mr. Caton's award, nor to do any thing to give validity to said award, until a new award is made, or Mr. Caton recovers his claim by a suit at law, in the event of no award taking place."

" And also appointed by virtue of a rule of reference from Baltimore county court, dated the seventeenth day of April, in the year one thousand eight hundred and thirty-four, in a case depending in said court, in which Richard Caton is

plaintiff, and Emily McTavish, executrix of Charles Carroll of Carrollton, is defendant, and docketed against said executrix in pursuance of said article, having first given due notice to all the parties, by their counsel, of the places and times of our meeting to hear and decide on the matters so referred to us, and having fully heard the evidence and representations of said parties touching said matters so referred to us by said sixth article, and said rule of reference, and having also fully heard and considered the arguments of the counsel of the respective parties to said reference, do award and determine under and in virtue of said sixth article and rule of reference, as follows, to wit :

" *First.* We do award and determine that in the said suit in Baltimore county court, between said Richard Caton and said Emily McTavish, as executrix of Charles Carroll of Carrollton, in which said rule of reference was made, there is nothing due to said Caton by the defendant, as executrix aforesaid, and that in said suit judgment be rendered for the defendant, with cost of suit.

" *Second.* In compliance with the instructions and authority heretofore given by the said Charles Carroll of Carrollton, deceased, to the former referees, Alexander Fridge, Samuel Sterret, and Henry Thompson, who made the award referred to in the aforesaid sixth article of the said agreement of reference of the twelfth day of February, one thousand eight hundred and thirty-four, and which said instructions and authority are conferred upon us by said sixth article :

"We do further award and determine that to equalize the annuity accounts agreeably to said instructions and authority, the sum of twenty-eight thousand two hundred and seventy-five dollars and thirty-seven cents and one-half of a cent, ($28,275.37½) shall be, and is hereby added to the balance of Mrs. Mary Caton's general account, as said account stands stated in said Charles Carroll of Carrollton's book of accounts, marked F. A. as of the twentieth day of November, one thousand eight hundred and twenty-nine, so that the balance of said general account on that day, may be eighty-two

**198   CASES IN THE COURT OF APPEALS**

Caton *vs.* Emily MacTavish, ex'rx of Charles Carroll of Carrollton —1838.

thousand six hundred and eight dollars and twenty-nine cents, ($82,608.29,) instead of standing as it now does, fifty-four thousand and three hundred and thirty-two dollars and ninety-two cents, ($54,332.92.)

"*Third.* In pursuance of the agreement of reference as aforesaid, and of the said instructions and authority of said Charles Carroll of Carrollton referred to in the next preceding section of this award, and which as aforesaid are conferred upon us, we do award and determine that the said balance of Mrs. Mary Caton's general account in said book of accounts of said Charles Carroll of Carrollton, marked F. A. folio 31, of fifty-four thousand three hundred and thirty-two dollars and ninety-two cents, ($54,332.92,) as the same stands charged on the twentieth of November, eighteen hundred and twenty-nine, and referred to in the will of said Charles Carroll of Carrollton, deceased, be and the same is hereby awarded to be the correct and proper balance on that day, of said account, except so far as the same is altered by the additions and directions awarded by us to be made to the same by the next preceding section of this award.

" And we do further award and determine that said general account of Mrs. Mary Caton, in said book F. A. in folio 31, is to stand and be debited with the sum of nine thousand six hundred and sixty-six dollars and sixty-two cents, ($9,666.62,) for advances made by said Charles Carroll of Carrollton on said general account of said Mary Caton, from and after the said twentieth of November, eighteen hundred and twenty-nine, which said sum of nine thousand six hundred and sixty-six dollars sixty-two cents, ($9.666.62,) includes the sum of four thousand six hundred and sixty-six dollars and sixty-two cents, ($4,666.62,) with which said account in said book F. A. folio 31, already stands charged from and after the said twentieth of November, eighteen hundred and twenty-nine.

" And we do further award and determine that said general account of said Mary Caton, in said book F. A. folio 31, is not to be credited with the sum of three thousand dollars,

with which it there stands credited as on the twentieth of November, eighteen hundred and thirty, and that it is not to be credited with any other sum from and after the twentieth of November, eighteen hundred and twenty-nine, either by virtue of the memorandum signed by said Charles Carroll of Carrollton, and dated the fifteenth day of February, eighteen hundred and thirty, at the foot of the said general account of said Mrs. Mary Caton, in said book F. A. folio 31, or by virtue of any other authority whatsoever.    In testimony whereof, we have hereunto set our hands and affixed our seals this 30th day of October, in the year 1834.

STEVENSON ARCHER, [*Seal.*]

R. B. MAGRUDER,      [*Seal.*]

" Thereupon the said Richard Caton filed the following exceptions to the award aforesaid, and to any judgment being entered thereupon, because :

" 1st. The arbitrators have exceeded their authority and have awarded upon subjects never referred, nor intended to be referred to them, viz. That *that* they have awarded and determined about Mrs. Mary Caton's accounts, and with what sum she should be charged, when such subjects were never referred in them.

" 2d. That the arbitrators have acted under powers never conferred upon them, but have mistaken their authority in supposing they were referred under any other appointment than the rule of court in this case.

" 3d. That the reference in this cause was not a general reference of all matters in dispute in this suit between the estate of Charles Carroll of Carollton and Richard Caton, but merely a reference of a claim of Richard Caton alone, as specified in a letter of Charles Carroll of Carrollton to Samuel Sterret, Alexander Fridge and Henry Thompson, dated ————, and that in this the arbitrators have mistaken their power and authority.

" 4th. That the arbitrators erred in supposing that any notice was given to any other person of the time and place of holding their sessions or meetings, than to the attorneys of Richard Caton and Richard Caton himself, no such notice

Caton vs. Emily MacTavish, ex'rx of Charles Carroll of Carrollton.—1838.

having been given, and the award, so far as it affects other interest than those of Richard Caton being of course ex parte, and without notice to the parties interested."

At January term, 1835, the following disclaimer was filed in the cause:

" The undersigned, before any judgment is entered in the case of Richard Caton vs. Emily McTavish, executrix of Charles Carroll of Carrollton, deceased, state and file this statement. That in the trial of this case before the arbitrators, they were but the counsel of Richard Caton, and of no other person or persons whomsoever, and they assert that they never appeared or acted as counsel, agents, or attorneys, for any person or persons whose interests were attempted to be affected by such award, except as counsel, agents, or attorneys of Richard Caton.

R. B. TANEY,
JOHN GLENN,
JNO. NELSON,
U. S. HEATH."

The county court (PURVIANCE, J.) overruled the exceptions, and rendered judgment for the defendant.

The plaintiff appealed.

" *Supplement to the Record, added by consent of Counsel.*

"BALTIMORE, *August* 13th, 1832.

" *Dear Sir,*—Circumstances have arisen, which induce me to ask you to have a new reference on the subject of *Mrs. Caton's* and *Mrs. Harper's* accounts in relation ' to the annual allowance given to each of them, for house-keeping, from the date of their respective marriages, so that they may be placed on an equal footing; and in relation to the compound interest on $2,500, a sum annually paid to *Mrs. Harper*, from the day of her marriage, which was not paid to *Mrs. Caton* for fourteen years after the day of her marriage.' When you assented to place *Mrs. Caton* on the same footing with *Mrs. Harper*, you thought it necessary to equalize *Mrs. Caton's* account by allowing compound interest for the period of 14 years she was deprived of her annuity of $2,500.    Had

she received it as *Mrs. Harper* did, she could at least have realized an annual interest, and have had thereby compound interest. The same operation went on in your hands, and therefore you thought it right to credit *Mrs. Caton* for the interest on that principle, and it was accordingly done in, I believe, the year 1816 or 1817, in your hand-writing—(it was in 1812.) This entry was reversed by Mr. McTavish in 1824, when I was in England, when under your direction, he undertook ' to EQUALIZE your accounts with your three children, for their respective allowances for house-keeping.' Reversing this allowance for interest on the annual allowance of $2,500, is not the only error made to Mrs. Caton's prejudice by Mr. McTavish, while the other branches of your family think she has had more than her proportion.

" The interest on the annuity of $2,500, unpaid to Mrs. Caton for 14 years, which was credited by you, and then deducted by Mr. McTavish, has been again credited by you under the award of Mr. Colt and Mr. Woodville. But, if you accede to my proposal, the arbitrators may reverse this entry if they do not discover full and deliberate evidence of your intention in making this credit—or, if they believe it is doing injustice to Mrs. Harper, or your son's family. Whatever may be their decision, I shall abide by it. The object is, to give equal and just measure to each, in the disposal of your bounty. If any thing be due, to make the accounts equal, I do not ask to receive the money now, but to be credited in your books for the amount, and to pay any demands which your estate may have against me for debt, or for any security or responsibility entered into by you, on my account.

" I suggest to you the names of Messrs. Alexander Fridge, Samuel Sterett, and Henry Thompson—persons of great reputation for a knowledge of accounts, character, and standing in society, to make the investigation, and the award I apply to you for.

" Should you agree to the reference, I will thank you to subjoin to my letter, a note addressed to those gentlemen, requesting them to compare the accounts of Mrs. Caton and

Mrs. Harper, 'for annuity allowed for house-keeping,' and to equalize them on the same principle, as to time and amount, from their respective marriages : and I believe it would be agreeable to Mr. Colt and Mr. Woodville, to be called in, to explain the investigations which they made in your books, on which they founded the award returned by them.

"I am, very truly, dear sir, your affectionate and humble serv't,                                                Rd. Caton.

"P. S. You will please to direct the referees to allow interest on sums paid to Mrs. Harper or to Mrs. Caton, and not paid to the other—and to correct charges of interest made to the injury of either ; and to equalize in equity and justice, their 'annuity' and 'general accounts,' according to amount paid, and to time.                                    R. Caton.

"To the Hon. Ch. Carroll of Carrollton, *Doughoragen Manor.*"

———————

"Douhoragen Manor, *August* 16, 1832.

"I assent to the wishes of Mr. Richard Caton, expressed in the foregoing letter, and request Mr. Alexander Fridge, Mr. S. Sterett, and Mr. Hy. Thompson, will do me the favour to look over the annuity accounts of my daughters, Mrs. Caton and Mrs. Harper, and to have them equalized on the same principle, as to time and amount, from the dates of their marriages respectively.   With respect to the compound interest, I thought it right, in justice, and so I entered it on my books.   There will be found, among my papers, my calculation on this subject, which will shew that the credit was given with due deliberation : but if it shall appear to the referees *not founded in justice*, or that *any error* has been *made by me*, Mr. Caton expresses a wish that the entry may be made conformably to justice and equity, or as to time and amount, as they may award.

"Given under my hand,        Ch. Carroll of C.

"*Witness*—Cath. Harper.'

"The postscript of the foregoing letter of Mr. Richard Caton, I desire may be considered a part of the subject matter referred.                                    C. C. of C.

"*Witness*—Cath. Harper.                *August* 30, 1832."

The cause was argued before BUCHANAN, Ch. J., STEPHEN, DORSEY, CHAMBERS and SPENCE, Judges.

C. F. MAYER, for the appellant.

THIS is an action by the appellant against the appellee, upon a declaration with the common money counts. The case was instituted by consent, and an agreement for refering it was entered into, submitting it to certain persons "according to the agreement" (to use the words of reference) "in Carroll vs. *MacTavish and Caton.*" This latter agreement was one which occurred between the devisees of Charles Carroll, and it is the 6th article of it to which the terms of reference in the present cause refer, and which to limit and qualify those terms, they make a part of that reference. The 6th article declares that "the award of *Richard Caton* is to be opened," and the "subject matter" of it referred to referees whom the stipulation requires "to act under the same instructions and authority as the former referees who made said award [of *R. Caton*] were instructed and authorized to do, and as if Mr. Carroll's letters to the former referees had been directed to them;" and the article proceeds to state "a case to be docketed against the executrix [of Mr. Carroll,] and this reference to be under a rule of court to which the terms of this stipulation are to apply." The letters meant in this article, and which define the object of reference in this cause, are appended to the record, and by agreement made part of it. They are: a letter from *Mr. Caton* to Mr. Carroll, dated 13th August, 1832, and one from Mr. Carroll (adopting *Mr. Caton's*) addressed to Messrs. Sterett, Thompson and Fridge, and together amount to a direction to these gentlemen to examine the "*annuity accounts*" and the "*general accounts*" of Mr. Carroll's daughters, Mrs. Caton and Mrs. Harper, respectively, and to "*equalize*" them on the same "principle as to time and amount from the dates of their marriages respectively." The submission admits Mr. Carroll's having credited compound interest to Mrs. Caton, and expresses Mr. Carroll's opinion

**204    CASES IN THE COURT OF APPEALS**

Caton *vs.* Emily MacTavish, ex'rx of Charles Carroll of Carrollton.—1838.

that it was a just allowance, but submits that point to the judgment of these referees.

The referees in the present case, Messrs. Archer and Magruder, awarded that in this suit " there is nothing due to *Caton* by the defendant as executrix of Charles Carroll, and that judgment be rendered for the defendant with costs of suit;" and further, that to " equalize the annuity accounts agreeably to said instructions and authority, the sum of $28,275 37, be added to the balance of Mrs. Caton's general account as that account stands stated in said Charles Carroll's book of accounts marked F. A. as of the 20th November, 1829, so that the balance of said general account may on that day be *eighty-two thousand six hundred and eight dollars and twenty-nine cents,* instead of standing as it now does, *fifty-four thousand three hundred and thirty-two dollars and ninety-two cents;*" and the award then goes on to charge Mrs. Caton's " general account" with a further sum of $9,666 62.    To this award exceptions were filed which the court overruled, and it rendered judgment on the award, and conformably to it.    The exceptions were:

*1st.* That the arbitrators had exceeded their authority in awarding on Mrs. Caton's accounts, and on the sum with which she should be charged.

*2d.* That they acted as under powers not conferred on them, and erred in supposing that they were acting under any other appointment than the rule of court in this case.

*3d.* That the reference in the case was not a general reference of all matters in dispute in this suit between Mr. Carroll's estate and *Richard Caton,* but merely a reference of a claim of *Richard Caton* alone, as specified in the letter to Messrs. Sterett, Thompson and Fridge.    The

*4th* Exception related to the omission to give notice to others than *R. Caton* of the meetings of the arbitrators, and was meant to preclude any implication of other parties by the award of the arbitrators.

The appellant will contend that for the reasons embraced in the exceptions the judgment of the County court was

erroneous in adopting and affirming the award; and he will urge,

1st. That the court erred in this, by affirming the award, taking any cognizance of the case; the subject of adjudication, as disclosed by the proceedings, and the terms of reference being exclusively proper for a court of equity.

2d. That the terms of reference limited the authority of the referees to the simple duty of ascertaining, on the facts and according to their views of equity, a single item of account, or at furthest two items; and did not authorize an inquiry into *Mr. Caton's* accounts *generally* with Mr. Carroll, nor to adjudge indebtedness on one or the other side.

3d. That it was the duty of the referees to report the annuity accounts and the general accounts in detail, as adjusted by them.

4th. That the referees have erred, and their award is defective in not determining specifically and distinctively on both the annuity accounts and the general accounts, and in passing only on the general account of Mrs. Caton.

The referees here were to be confined to the same subjects submitted to the first and second set of arbitrators mentioned in the record. The letters qualify the functions of the arbitrators. Under the 6th article, Messrs. Archer and Magruder were substituted for Fridge, Thompson and Sterett. The counsel cited 1 *Stor. Eq. Sec.* 532, 535, 539, 543, 544, 550. *Ketland, qui tam vs. The Cassius,* 2 *Dallas,* 368. *Owen vs. Hurd,* 2 *Term Rep.* 644. *Fitzpatrick vs. Pickering,* 2 *Wilson,* 68. *Martin vs. Commonwealth, et al,* 1 *Mass. Rep.* 387. *Dorsey vs. State use Dorsey,* 3 *H. and McHy.* 389. *Bowie vs. State use Hughes,* 3 *H. and McHy.* 408. *Harris vs. Dorsey,* 1 *H. and J.* 416. *West vs. Stigar,* 1 *H. and McHy.* 247. *West vs. Stigar,* 4 *H. and McHy.* 490.

MEREDITH, for the appellee:

The record as it came from the County court, presents four exceptions against the award. That court passed upon them all, and entered judgment against the plaintiff below. As to

all these exceptions, the principles involved in them are set-tled by a decree of the court. They were all decided upon an appeal from the Orphans court, affecting Mr. Carroll's estate. *Mrs. Mac Tavish* then claimed under these same ob-jections, and here on full argument the decree of the Orphans court was reversed. *Caton,* it is true, is not bound by that decree, but the same questions are now again discussed here, though the funds of the estate have been distributed under them.

Every reasonable intendment will be made by the courts in favour of awards. 11 *Law Lib.* 53. *Cromwell, et al vs. Owings,* 6 *H. and J.* 10. *Archer vs. Williamson,* 2 *Har. and Gill,* 67. New exceptions are now, however, presented against the judgment. Are they valid? The law of Mary-land as to awards, is regulated by the acts of 1778, ch. 21, sec. 8, and 1785, ch. 80, sec. 11. The award is to remain four days in court. No judgment can be entered until notice to the adverse party. There are two modes of dealing with awards. Extrinsic objections are made available, upon mo-tions to set aside, sustained by affidavit. Intrinsic objec-tions, apparent on the face, are taken by exception. If no motion, after the time has passed, judgment goes as of course. If exceptions are filed, additional exceptions may be made at hearing. But after judgment rendered, the court will listen to no exceptions. The subject is beyond their reach. An opposite practice here would expose parties to surprise, and convert the court into any thing but an appel-late court. The act of 1825 is conclusive on this point. Questions raised here must appear affirmatively to have been decided below. *Davis vs. Leab,* 2 *Gill and John.* 306. *Hyatt vs. Boyle,* 5 *Gill and John.* 110. *Grahame, et al vs. Harris, et al,* 5 *Gill and John.* 491. Arbitrators need only state results, and not the process of their decision.

On the question of jurisdiction, he cited *Soilleux vs. Herbst,* 2 *Boss. and Pull.* 444. A court of common law will deal with matters of ecclesiastical jurisdiction, where submitted and awarded upon.

R. Johnson, on the same side.

This very paper called an award, was in the prior cause.

Is the objection to jurisdiction well founded? An award may be enforced at law. If *Carroll's* books showed him a debtor to *Caton*, the latter could recover at law. A court of law has jurisdiction over an ascertained balance. *Assumpsit* may be maintained upon a valid award. So if a suit at law is adopted by mistake, upon a reference the award in such case may be the foundation of a judgment. In such a case, in a court of general jurisdiction, the presumption is in favour of jurisdiction. *Prima facie* the County court had jurisdiction in this case. But there is nothing in the objection. Matters of an equitable nature may be referred. *Schriver vs. Devilbiss*, 9 *Gill and John.* The award gives jurisdiction, provided it does not transcend the reference. That question has reference to the award. The judgment follows the award.

This court cannot get behind the award. They have not *Carroll's* books. How do you ascertain that *Caton* could not recover at law. The counsel regard it as a case of *gift.* The terms of reference concede it to be a legal claim, and which he could only enforce at law.

But suppose we err in these views. It is at any rate a question of debits and credits. The action is brought. That such matters may be referred, *Dryden vs. Robinson,* 2 *Sim. and Stuart,* 529. *In* 1 *Con. C. Rep.* 572, an award made after a bill filed may be pleaded to a bill.

Then have the arbitrators transcended their authority. If so, the award is bad for that excess in whole or in part according to the fact.

What is the authority here? It will be found in the 6th article of reference, under the agreement of 12th February, 1834. The first award of *Caton* was to be opened, and the new arbitrators were authorized to decide upon the subject matter of that award. The letters of Mr. Carroll were to be submitted to them, and the demand to be again examined. A suit was docketed, and a reference made under rule of court to prevent a revocation by *Caton.* The executrix was

not to pay until *Caton* had procured a judgment. The arbitrators are selected. The award is made. No extrinsic objections are set up. Exceptions to the award are merely taken. In what particular then can it appear that the arbitrators have exceeded their authority. It decides that *Caton* has no claim. His right was the subject submitted. The excess of authority nowhere appears. *Karthaus vs. Ferrer, et al,* 1 *Peter S. C. R.* 222. The statement of facts shows the nature of the claim. It required an examination of various accounts. Errors of judgment are not to be involved with defects of power. The former are not impeachable. The arbitrators had power to reduce his claim, and their errors you cannot touch. They were not bound to give de tails of accounts. A general reference refers law and fact exclusively to the arbitrators. Then why detail accounts? Their acts are presumed to be correctly done. Mere error will not reverse them. It must be corruption, fraud or malpractice. They were not bound to discriminate between the general account and the annuity account. They decide on both. The arbitrators declare a final judgment, and this is co-extensive with their whole power.

J. R. Cooke, in reply:

The great question is, whether the court below had jurisdiction? If it had no jurisdiction, this court will *ex mero moter* reverse their judgment. Does the mere institution of the suit give jurisdiction? The courts of *England* until the time of *Charles* 2d, entertained no jurisdiction over awards. Then by agreement *inter partes* in court, by direction of the court causes were referred. Convenience extended this jurisdiction. The court acted by rules, then produced another step. The courts still adhere to the idea, that a reference was not a suit depending, and exercised no jurisdiction confirming awards. They required verdicts or a confession of judgment, and retained the power to substitute a non-suit for the verdict. They enforced awards by a rule granted on evidence as for not carrying out an agreement. The courts by

degrees permitted rules of court referring all matters in dis-
pute to arbitrators, and so departed from their strict course as
originally pursued.

By statute 9 *and* 10 *Will.* a new step was taken.   An
agreement or rule was made without suit to refer, award
and decide ; and then the court heard the parties : and here
the matter stopped in *England.*   The statute of *Will.* was
never in force here.

In 1778 the legislature made an important alteration in
the law of awards.   Courts were here empowered to render
judgments on awards.   Their jurisdiction is directed with
reference to suits depending before them.   It does not take
away any common law power.   The act of 1778 is cumula-
tive.   The common law courts had power to enforce awards
by attachment : in one class of cases they enforced by
judgments.   Two classes of cases of which the courts of
Maryland have jurisdiction.   All matters pending may be
referred.   Then is there any case where the common law
courts may refer all agreements—may refer matters over
which they can exercise no control, nor pass judgment.   No
man's interest shall be adjudged until he is heard.   Parties
not before a court, nor heard, shall not be prejudiced.   An
award made colorably cannot be enforced.   Such an action
would be brought in error.   This award was the settlement
of the interest of at least four persons, not properly before
the court.   The counsel here referred to the statement of
facts.   In 1832 the accounts were considered complicated.
All parties considered themselves aggrieved.   The general
account was the regulator of the dividend at Mr. Carroll's
death : and as the residuum of the estate went into this
general account, it affected all parties under his will.   Hence
the general account should be correctly kept.   Among other
facts referred to out of the record is the magnitude of the
claim, but the court is not now to decide on *Caton's* claim.
The principal question is whether the court below had juris-
diction.   The authority of the court below can be revoked

here, for we were deprived of the talent of two of the judges on the question.    It was decided by a single associate.

What class of cases does the act of 1778 include.    It embraces power to enter judgment on an award simply to the extent of the declaration.    This remedy is cumulative. It is competent to permit parties litigant to refer all matters between them to referees out of court.    In England it may be enforced by attachment—and here under such an award, the parties may invoke the aid of the act, and the courts, if they find a matter of common law jurisdiction in the award, may enter a judgment according to the award, affecting only the parties before them.    The case of *The State use of Devilbiss* vs. *Shriver* does not conflict with this idea.    The judgment there was right.    It found an award upon a common law matter.    A money award between A and B.

If the arbitrators had directed equitable matters to be performed, the court would have ordered an attachment, and not *quoad hoc* have proceeded to render judgment.

But that case is no answer against a cause in which *four* parties interested are not before the court.    The case of *Glenn, permanent trustee of Fahnestock* vs. *Karthaus,* is an authority fatal to the appellees.    An action at law, as an action of trover, cannot by agreement be treated as an equity cause.    An audit of the equities of the parties was refused the function of the law side of this court.    The parties were forced to confess judgment, and be content with the mere opinion of the judges upon their rights.

The subjects on which a judgment is founded are well known—a verdict—confession—non-suit.    An award made in a cause depending before its common law jurisdiction.

Judgments are reversed for want of jurisdiction.

We want to go back to where *Mr. Caton* made the first false step.    He was then under the joint direction of friends and foes.    What was the matter submitted?    The general account was in fact a part of the testamentary disposition of Mr. Carroll's estate.    It was part and parcel of his will. The sixth article of the agreement refers to this controversy.

That article is powerless in itself. It refers to certain letters. These constitute essential parts of the contract. A former award is nullified. It is only to be reversed *sub-modo*. Persons may refer on their own terms. A submission may overrule legal principles, and proceed arbitrarily and upon assumed notions of equity. Such is the reference of 1834, under the letter of 1832. The interest of many parties are involved in the agreement. The mode of reference is the next step to be considered. A case is to be docketed. Then what sort of a case?

The case to which this agreement refers should have been against all the parties interested. That the interest of all might be protected. The suit was not brought on the award. The common law courts could not enforce the award on its several branches. The parties resorted to the wrong court. A bill filed was the proper case to docket. That would have conformed to the agreement. The case docketed was wrong, with reference to its effects and purposes. Then this common law case is extra judicial. It relates to persons and interests not before the court. The sole question is, had the court jurisdiction. We ask for a non-suit. As it now stands it is a conclusive bar, and created by a mode never contemplated.

STEPHEN, Judge, delivered the opinion of the court.

A dispute existing in this case between the appellant and the legal representatives of the late *Charles Carroll of Carrollton,* concerning a certain sum of money claimed by the appellant from the appellee, as the executrix of Mr. Carroll, upon an award made in favour of the appellant in the life-time of *Mr. Carroll,* for the purpose of effecting an amicable adjustment of such controversy by arbitration, it was agreed between the parties that a suit should be docketed in *Baltimore* county court, and the controversy should be referred to arbitrators, who were authorized to act under certain instructions and powers delegated to them, to be found in certain letters of correspondence which passed between *Mr. Carroll* and

the appellant in the life-time of *Mr. Carroll.*    By the terms
of submission, it was stipulated between the parties that the
award which was the foundation of the appellant's claim,
should be opened, and the subject matter of it examined by
the referees, for the purpose of deciding upon the merits and
justice of the appellant's claim, and of awarding what, if
any thing, was due to the appellant.    The arbitrators in pur-
suance of the powers vested in them, after an examination
of the subject matter submitted to their arbitrament and de-
cision, awarded that in the suit in *Baltimore* county court,
between the appellant and appellee, there was nothing due to
the appellant by the appellee, as executrix of *Mr. Carroll,*
and that in said suit, judgment be rendered for the defendant
with costs of suit.    To this award, exceptions were filed by
the appellant in the court below, which being overruled, and
judgment rendered for the appellee, conformably to the
award; the appellant prayed an appeal from the judgment
rendered against him by *Baltimore* county court; which
brings under the revision of this court the legality of the
decision of the court below. · A question of jurisdiction has
been raised in this court, which does not appear from the
record to have been brought to the notice of the court below.
It is that the subject matter in controversy was not properly
cognizable by a court of common law, but more appro-
priately belonged to the cognizance of a court of equity,
where all the parties interested might have been brought be-
fore the court, and the agreement to refer, made a rule of that
court.    To this objection to the validity of the judgment of
the court below, we cannot accede.    If the grounds and
elements of the award, upon which the claim of the appel-
lant was founded, were matters of account, more appro-
priately belonging to a court of equitable jurisdiction, as
being more competent than a court of law, to administer full
and complete justice between all the parties in interest, or
who might be ultimately affected by the decision, still we do
not think that under the circumstances of this case, such
an objection can be available to oust the jurisdiction of the

Caton *vs.* Emily MacTavish, ex'rx of Charles Carroll of Carrollton.—1838.

court below, or render it incompetent to enter judgment upon the award of the referees in this case.

In *England* it is a familiar practice to refer to arbitration, not only all matters in controversy in the cause pending between the parties, but all matters in dispute between the parties to the cause, whether involved in the suit, or extraneously existing upon other grounds; and in such case, it is not unusual for the plaintiff to take a verdict by consent for security; and if the award be made in his favour, he may at his election, either enter up judgment on the verdict, and take out execution for the sum awarded, if that does not exceed the sum for which the verdict was taken, or he may proceed by attachment. *Kyd on Awards*, 314. 5 *East*. 139. The arbitrator in such a case, has a limited jurisdiction within the amount of the verdict, and cannot exceed it.

In the case now before the court, the declaration in the court below upon its face, presented matter properly cognizable in a court of law, and it was not essential to the support of its jurisdiction, that the matters in controversy which were submitted to the arbitrators, should be proper subjects for the cognizance of a court of common law. The legality of such a reference, and the competency of the court to enforce an award, made in pursuance of it, has already been decided by this court, in a cause in which not only the subject matter of the suit below, but all matters in dispute between the parties, embracing matters of equitable cognizance, were submitted to the decision of arbitrators, and their award was enforced by a judgment from which an appeal was taken to this court, and the same was here affirmed.

As heretofore remarked, it appears to be the practice of the English courts, not only to sanction references of the cause pending, but of all matters in dispute between the parties, and to enforce the award, sometimes by verdict, and at other times by attachment for contempt: and since the passage of the *statute* of *William*, it has been decided, that an agreement to refer a bill depending in chancery may,

under that statute, be made a rule of a court of law.   For this principle, see 14 *Vezey*, 264.   In that case there were two bills depending in chancery, and the reference, which was a general one, of all matters in dispute, was made an order of the court of king's bench.   Where the award is for the payment of money, no difficulty can arise in the execution of it by a court of common law jurisdiction.   The judgment is entered upon the award, and execution issues upon it in the same manner as upon a judgment on verdict, or by confession; if it be of any other matter, as a conveyance or deed to be executed by one of the parties to the other, it may be enforced by attachment, and in such case the award is executed, though not by the same kind of process.   The agreement to refer, being made a rule of court, the failure or refusal to perform the award, would be a contempt of court, for which we think the process of attachment might properly issue.   Such seems to be the practice in *Pennsylvania*, where they have a statute in some of its features strikingly analogous to our own.   That statute provides that where the plaintiff and defendant consent to a rule of court, for referring the adjustment of their accounts to certain persons mutually chosen by them in open court—the award or report of such referees, being made according to the submission of the parties, and approved by the court, and entered upon the record or roll, shall have the same effect, and be as available in law, as a verdict by twelve men.   Our act of 1778, ch. 20, provides for the reference of any cause pending in court, by rule of court, with the consent and agreement of the parties thereto, and authorizes the court to give judgment upon the award of the referees, and to award execution thereon in the same manner as upon verdict, confession, or non-suit, and declares that such judgment shall have the same effect to every intent and purpose, as any judgment upon verdict or confession would have.   In both cases the reference is made under a rule of court, and the award is to have the same effect as the verdict of a jury.

In 1 *Dallas*, 365, *President Shippen* says, where a report of referees awards money to be paid on one side, and certain other things to be done on the other, if the court cannot enforce both, they will certainly enforce neither. In the present case the question will be, whether they can oblige the plaintiff to perform his part of the award. They certainly cannot do it by *execution*, but if they can do it by *attachment*, the remedies are mutual, though not by the same kind of process. The report of the referees in that case was then confirmed; and he declares in another part of his opinion, " in all cases of this kind, the court will exercise their equitable powers in such a manner, as not to suffer either party to elude the performance of their part of the award."

Under this view of the case, we think that the objection to the competency and jurisdiction of the court, raised by the counsel for the appellant, has not been sustained. The court below had, we think, ample jurisdiction to enforce the performance of the award of the referees, although it involved the consideration and decision of matters which might properly belong to the cognizance of a court of equity. Causes instituted in a court of equity, are not unfrequently referred to the decision of such a domestic forum, as perfectly competent to decide upon the relative claims of the parties there litigating; and we can perceive no objection to it in the present instance. Such a tribunal is absolved from the obligation of technical rules, and perfectly competent to decide upon the merits of the case according to the principles of equity and justice. When their decision is made, and the rights of the parties are fully adjusted, we can perceive nothing improper in the execution of it by a court of common law jurisdiction.

The question of jurisdiction being disposed of, we will briefly advert to the exceptions filed to the award. The *first* and *second* of those exceptions, impeach the award upon the ground that the arbitrators have transcended the limits of their authority, in awarding upon subjects not embraced by the submission. It is we think a sufficient answer to these

exceptions to say, that the validity of this award is not affected by them.   It cannot be controverted that the referees were acting strictly within the pale of their powers, in awarding upon the claim of the appellant upon his award, because the subject matter of it, in the express terms of the submission, was referred to their decision; and the principle is well settled, both in *England* and in this *State*, that where the matters awarded are independent and distinct from each other, those which are within the submission are good, and are not vitiated or contaminated by those which are without it.   6 *H. & John. Rep.* 10.   11 *Law Library*, 71.   An award may be bad in part, and good in part, if the void part of the award is not of matter necessary to be decided, so as to render it final according to the terms of the submission, or be not the consideration or recompense of the thing awarded to be done on the other side.   These exceptions to the validity of the award, upon the ground of an excess of authority by the arbitrators, in awarding that nothing was due to the appellant in that suit, were, we think, therefore, properly overruled by the court below.

The *third* exception we also think cannot be supported, but was properly overruled by the court below.   Courts of justice in their latest decisions, have manifested a disposition to treat awards with more liberality than formerly.   Every thing is to be intended in favour of an award.   11 *Law Library*, 63.   Every fair and reasonable intendment will be made to support them, and such a construction given to them, that they may stand if possible.   *Ibid*, 53.   Where it is also said, " it is now quite clear, that the court will intend that all matters have been decided by the arbitrator, unless the contrary appears, and in like manner it will be intended that he has not exceeded his authority."   Unless therefore it plainly appears, that there were other matters in controversy in the suit, than the award of the appellant, it will be intended in support of the award of the referees, that they have not exceeded the limits of their authority, in deciding that there was nothing due to the appellant, and it will be

intended that, in coming to that conclusion, they had not departed from the limits of their power, or the subject matter of the reference, by taking into their consideration any other claim of the appellant, than that founded upon his award. We think further, that the arbitrators were not bound to have stated in detail the grounds upon which they came to the conclusion, that nothing was due to the appellant. It was not their duty to perform the office of auditor or master in chancery, and report facts for the decision of the court; but to state the result of their examination, which according to the express terms of the submission, was to be final. *Kyd on Awards*, 345; where the distinction is taken between the duty of a master and that of an arbitrator, the latter is instituted judge of the facts without appeal; the former is only a minister to prepare something for the court, which is really the judge; and when by agreement of the parties, the award of the referees is to be final, their power seems to be more of a judicial than a ministerial character. But in coming to this conclusion, we do not mean to decide whether or not the arbitrators in any part of their award have exceeded their authority.

JUDGMENT AFFIRMED.